UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VINITA RATHOD,

                Plaintiff,

-v-

WELLINGTON PHYSICAL THERAPY
AND ACUPUNCTURE PLLC, *et al.*,

                Defendants.

---

23-CV-3276 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Vinita Rathod brings this action against Defendants Wellington Physical Therapy and Acupuncture PLLC and Nikki Yu, asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

    Before the Court is Defendants' motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants in part and denies in part Defendants' motion, and the Court grants Plaintiff's request for leave to file a second amended complaint.

**I.    Background**

    **A.    Factual Background**

    The following facts are drawn from the allegations in the amended complaint, which are presumed true for the purpose of resolving Defendants' motion to dismiss. (*See* ECF No. 37 ("FAC").)

    Plaintiff Vinita Rathod worked as a physical therapist for Defendants Wellington Physical Therapy and Acupuncture LLC ("Wellington") and Nikki Yu between September 21, 2021 and March 1, 2023. (*Id.* ¶¶ 14, 17.) Wellington is a medical facility that provides physical therapy and acupuncture services, and Yu owns the business. (*Id.* ¶¶ 9-10.) Yu hired Rathod,

supervised her, and controlled all aspects of her employment, including her work schedule and conditions. (*Id.* ¶¶ 15-16.) Defendants had to obtain an H-1B visa for Rathod, and in September 2021, Defendants unlawfully required Rathod to pay them the cost of her visa filings. (*Id.* ¶¶ 22-23.)

Rathod was paid on an hourly basis. (*Id.* ¶ 18.) If Rathod did not work a full day or a full week, the amount she was paid varied. (*Id.* ¶ 19.) The hours that Rathod worked were not paid at a set hourly rate, and Rathod alleges that Defendants would arbitrarily adjust her regular rate and overtime rate. (*Id.* ¶¶ 25, 69.) Moreover, Rathod was either not paid or underpaid for her work. For example, Rathod worked at least 12.5 days between February 12, 2023 and March 1, 2023, but Defendants did not pay Rathod any wages for that work. (*Id.* ¶¶ 45-46.) Rathod also often worked more than 40 hours in a single workweek without being paid overtime. (*Id.* ¶¶ 25, 62-63.) Specifically, Rathod worked more than 40 hours during certain weeks in March and June 2022, but she was not paid at one-and-a-half times her regular rate of pay for the hours over 40 hours. (*Id.* ¶¶ 64-67.)

Rathod did not receive pay stubs; rather, she received documents that stated her gross pay and net pay but did not include the number of hours worked, the regular rate of pay, or the overtime rate. (*Id.* ¶ 26.) Defendants also did not provide Rathod with wage statements for each pay period that included the dates of work covered, Rathod's name, Defendants' name, Defendants' address or phone number, Rathod's rate and method of pay, any deductions or allowances, and Rathod's net wages. (*Id.* ¶ 30.) By failing to provide adequate wage statements and notices, Rathod alleges, Defendants delayed her realization that Defendants were stealing wages from her. (*Id.* ¶ 53.)

On February 19, 2023, Rathod informed Defendants that her employment was ending because she was relocating. (*Id.* ¶ 27.) On March 2, 2023, Yu requested that Rathod provide a resignation letter with March 2, 2023 as her last date, and Yu informed Rathod that she would not be paid for her work from February 12, 2023 through March 2, 2023 due to a penalty in her employment contract. (*Id.* ¶¶ 28-29.)

### B. Procedural History

On April 19, 2023, Rathod brought this complaint against Defendants. (ECF No. 1.) On October 6, 2023, Defendants filed a motion to dismiss the complaint. (ECF No. 31.) Rathod then filed an amended complaint on October 26, 2023, which is the operative complaint. (ECF No. 37.) Defendants filed a motion to dismiss the amended complaint on November 16, 2023. (ECF No. 39.) Rathod filed an opposition to Defendants' motion to dismiss on November 30, 2023 (ECF No. 42), and Defendants filed a reply in support of their motion on December 7, 2023 (ECF No. 44).

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* at 678, the Court must draw

"all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  Determining whether a complaint states a plausible claim is ultimately a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. Discussion

Defendants move to dismiss Rathod's claims under the NYLL and the FLSA.  The Court grants Defendants' motion to dismiss Rathod's minimum wage claim under the NYLL but denies the rest of Defendants' motion.  The Court also grants Rathod's request for leave to file a second amended complaint.

### A. Overtime Claim Under the FLSA

Rathod asserts a claim under the FLSA for failure to pay overtime wages.  Under the FLSA, subject to certain exceptions, "no employer shall employ any of his employees . . . for a workweek longer than forty hours" unless the employee receives compensation for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  To establish an overtime claim, an employee must allege that she (1) "worked in excess of 40 hours a week," (2) "was a non-exempt employee," and (3) "was paid less than one and one-half times the regular rate for all overtime hours." *Cruz v. Rose Assocs., LLC*, No. 13-CV-112, 2013 WL 1387018, at *3 (S.D.N.Y. Apr. 5, 2013); *see also Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

Contrary to Defendants' argument, Rathod's allegations are sufficient to state a claim for unpaid overtime under the FLSA.  "[T]o state a FLSA overtime claim, a plaintiff must allege only that she worked compensable overtime in a workweek longer than forty hours, and that she was not properly compensated for that overtime." *Tackie v. Keff Enters. LLC*, No. 14-CV-2074, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2024) (citing *Nakahata v. N.Y.-Presbyterian*

4

*Healthcare Sys., Inc.*, 723 F.3d 192, 199-201 (2d Cir. 2013)).  Rathod has done so here, as she alleges that during at least three specific weeks in March and June 2022, she worked more than 40 hours a week but was not paid at the appropriate overtime rate.  (FAC ¶¶ 64-67.)  While Defendants fault Rathod for not specifying the exact number of overtime hours she worked, the law does not "require[] plaintiffs . . . to provide a week-by-week recounting of the hours they worked," *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023), and the Second Circuit has explicitly "declined to make an approximation of overtime hours a necessity in all cases," *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013).

The Court also declines Defendants' invitation to conclude at this stage that Rathod is exempt from the FLSA's protections.  An employee is exempt from the FLSA's overtime requirements if she is "employed in a bona fide . . . professional capacity."  29 U.S.C. § 213(a)(1).  That phrase is defined as someone, in relevant part, who is "[c]ompensated on a salary or fee basis . . . at a rate not less than $684 per week" and whose "primary duty is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300(a).  To establish that Rathod is exempt, "Defendants must establish that [her] employment met *both* a salary test and a duties test."  *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 596-97 (S.D.N.Y. 2011).

Because Rathod is not a salaried employee, she is not exempt under the provisions cited above.  "[A]n employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee."  *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615 (2d Cir. 1991).  Rathod fits that description, as she alleges that if she "did not work a full day or a full week, she was not paid a set amount," and that "her compensation was

subject to reduction based on the quantity of work performed." (FAC ¶¶ 19-20.) Instead of being salaried, then, Rathod "was paid an hourly rate and paid on [an] hourly basis." (*Id.* ¶ 20.) Thus, even if Rathod meets the duties test, she does not meet the salary test and is not exempt from the FLSA's provisions.

While Defendants attempt to introduce Rathod's employment contract as evidence that she is a salaried employee (*see* ECF No. 41-1 ¶ 2), Rathod does not incorporate her employment contract in the complaint. At this stage, the Court "must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). Moreover, even if the Court were to consider the employment contract, it "merely raises disputes of fact" about how Rathod was paid "that the Court may not resolve on a motion to dismiss." *State v. U.S. Dep't of Com.*, 315 F. Supp. 3d 766, 783 (S.D.N.Y. 2018).

Defendants next contend that Rathod is exempt from the FLSA under a regulation that exempts any employee who is "the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof." 29 C.F.R. § 541.304(a)(1). Such employees are exempt from the FLSA's protections, even if they are not paid on a salary basis. *McNeely v. Metro. Life Ins. Co.*, 376 F. Supp. 3d 225, 231 (S.D.N.Y. 2019).

As an initial matter, nothing in the complaint suggests that Rathod holds a license to practice physical therapy. While Defendants assert that Rathod has a license, that assertion relies on additional evidence that is not incorporated into Rathod's complaint. More importantly, even

if Rathod holds a license, the Court cannot conclude at this point that Rathod is "actually engaged in the practice" of "medicine." 29 C.F.R. § 541.304(a)(1). One relevant regulation explicitly states that "[i]n the case of medical occupations, the exception from the salary or fee requirement does not apply to pharmacists, nurses, therapists, technologists, sanitarians, dietitians, social workers, psychologists, psychometrists, or other professions which service the medical profession." *Id.* § 541.600(e). Although it is unclear whether the reference to "therapists" in that regulation refers to physical therapists like Rathod, the list of professions in the regulation suggests that not all medicine-adjacent professions are exempt under the FLSA.

As another court has explained when discussing the licensed medical professional exception, "[w]ith only one exception, the practitioners who are expressly included within or have been held to fall within § 541.304 are required to hold doctoral-level medical degrees." *Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003, 2015 WL 1055084, at *5 (E.D.N.Y. Jan. 23, 2015). Thus, in tackling the "question of first impression" of whether "a licensed acupuncturist who is not a medical doctor falls within [the licensed medical professional] exception," that court concluded that the relevant regulations "suggest[] that an acupuncturist is more like one of the independent professionals mentioned in 29 C.F.R. § 541.600(e) than she is like a medical doctor." *Id.* Absent additional discovery about Rathod's job responsibilities and the nature of the physical therapy profession, the Court cannot grant Defendants' motion to dismiss Rathod's FLSA claim on the ground that she is exempt. That is especially so in light of the principle that "exemptions to the FLSA are narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (internal citation and quotation marks omitted).

7

Accordingly, the Court denies Defendants' motion to dismiss Rathod's FLSA overtime claim.

B.     **Wage Theft Prevention Act Claims**

Defendants also move to dismiss Rathod's claim under Sections 195(1) and (3) of the NYLL, which asserts that Defendants unlawfully failed to provide a notice with certain information at the time of hiring, *see* NYLL § 195(1), and to provide wage statements with every payment of wages, *see id.* § 195(3).  Defendants' primary argument is that under the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), Rathod lacks standing to pursue her claim because she has not suffered any downstream consequences from Defendants' alleged failure to provide the relevant notices and statements.  That argument is a "familiar one that has been consistently raised in wage and hour cases." *Lipstein v. 20X Hosp. LLC*, No. 22-CV-4812, 2023 WL 6124048, at *8 (S.D.N.Y. Sept. 19, 2023).

The Court concludes that Rathod has adequately pleaded an injury in fact to establish standing.  Rathod plausibly alleges that she suffered monetary harm because Defendants failed to provide accurate wage notices and statements (*see* FAC ¶¶ 53, 68), which "hurt [her] ability to assess whether [s]he was being properly paid and therefore promptly raise issues of underpayment with [her] employer." *Lipstein*, 2023 WL 6124048, at *9.  As other courts in this Circuit have concluded, such consequences are sufficient to confer standing upon Rathod to pursue her claims.  *See, e.g.*, *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023); *Bueno v. Buzinover*, No. 22-CV-2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar 7, 2023) (same).

Defendants next contend that Rathod is not entitled to a new notice every single time her rate of pay changes.  But that argument misunderstands Rathod's claim.  As articulated in her

complaint, Rathod's claim is that New York law "requires that employers provide employees . . . *at the time of hiring*, a notice containing" certain information, including the "rate or rates of pay and basis thereof."  (FAC ¶ 50 (emphasis added).)  As Defendants themselves concede, the statute does enable plaintiffs like Rathod to bring an action for failure to furnish an initial notice upon hiring.  (*See* ECF No. 40 at 20.)  And while Defendants briefly suggest that Plaintiff was hired before the wage notice requirement was enacted, the Wage Theft Prevention Act and its imposition of damages for failure to provide a notice upon hiring took effect on April 9, 2011, long before Rathod was hired.  *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 509-10 (S.D.N.Y. 2017).

The Court rejects Defendants' remaining arguments for dismissal.  Rathod is not exempt from the Act's protections, as Defendants contend, as the relevant statute broadly defines an "employee" as "any person employed for hire by an employer in any employment."  NYLL § 190(2).  That expansive definition covers Rathod, and exemptions from a different provision of the NYLL that Defendants invoke do not necessarily apply to Section 195.  *Cf. Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 615-16 (2008).  Finally, while Defendants claim in their motion to dismiss that they did indeed furnish Rathod with a wage notice that complies with New York law (ECF No. 40 at 20-21), the Court again declines to consider such extrinsic evidence or resolve such factual disputes at this stage.

    **C.**    **Unlawful Deductions Under the NYLL**

Defendants next move to dismiss Rathod's claim that Defendants unlawfully deducted her wages as the result of an unlawful penalty for quitting and an unlawful requirement that she pay the fees for her H-1B visa, in violation of NYLL Section 193.  Under that provision, "[n]o employer shall make any charge against wages, or require an employee to make any payment by

9

separate transaction unless such charge or payment is permitted as a deduction from wages." NYLL § 193(3)(a).

Defendants' sole argument for dismissal is that payments for an H-1B visa cannot be considered as deductions from "wages," meaning that Rathod's claim is not covered by the statute. (ECF No. 40 at 21-22.) But the statutory language makes it unlawful for an employer not only to deduct amounts from an employee's wages, but also to "require an employee to make any payment by separate transaction" that is not permitted. NYLL § 193(3)(a). Because that statute "does not require that the objectionable 'separate transactions' come from wages paid to the employees by the employer," *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 952 (S.D.N.Y. 2013), the fact that the H-1B visa payments may not have been deducted directly from Rathod's wages does not require dismissal of the claim. Moreover, in addition to her allegations about the H-1B payments, Rathod also alleges that Defendants unlawfully deducted her pay when she informed them that she would be quitting. *See id.* at 935 ("[T]he NYLL regulations expressly prohibit deductions for fines or penalties for . . . quitting by an employee without notice." (internal quotation marks and citation omitted)). Accordingly, Rathod has alleged sufficient facts to state a claim under New York Labor Law Section 193.

### D.     Claims Against Individual Yu

Defendants move to dismiss the claims against individual Defendant Yu on the ground that Rathod fails to sufficiently allege that Yu was Rathod's employer under either the FLSA or the NYLL. "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). Courts consider four factors to

determine whether someone is an employer: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks and citation omitted). "The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA," and as a result, "district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Williams v. Epic Sec. Grp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

Considering the factors outlined above, the Court concludes that Rathod has sufficiently alleged that Yu was her employer. Rathod alleges that Yu was the one who hired her and that Yu managed the conditions of her employment by setting policies about work allocation and monitoring Rathod's work product. (FAC ¶¶ 15-16.) Yu also made decisions about how and whether Rathod would get paid, and Yu was the one who told Rathod that she would not be paid for her work for a period of time due to her decision to resign. (*Id.* ¶¶ 15, 29). Rathod also alleges that upon telling Yu that she would be leaving the job because she was moving, Yu was the one who ended Rathod's employment. (*Id.* ¶ 16.) The Court therefore denies Defendants' motion to dismiss the claims against individual Yu.

### E. Minimum Wage Claims and Leave to Amend

Rathod also asserts a claim for failure to pay minimum wage under the NYLL, but she agrees with Defendants in her opposition to the motion to dismiss that that claim should be dismissed. (*See* ECF No. 42 at 8-9.) Accordingly, the Court grants Defendants' motion to dismiss Rathod's minimum wage claim under the NYLL.

11

While Rathod concedes that her NYLL claim should be dismissed, she also seeks leave to amend her complaint to add a minimum wage claim under the FLSA. (*See id.*) The Court grants such leave, as Defendants have not demonstrated that such amendment would be futile or would prejudice Defendants. "To state a FLSA minimum wage claim, a plaintiff must allege that she was the defendant's employee, that her work involved interstate activity, and that she worked hours for which she did not receive minimum and/or overtime wages." *Tackie*, 2014 WL 4626229, at *2 (citing *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)). Rathod alleges that she worked at least 12.5 days between February 12, 2023 through March 1, 2023, but that Defendants did not pay her any wages for that period of time. (FAC ¶¶ 45-46.) While Defendants attempt to submit copies of Rathod's pay stubs to show that Rathod was actually paid $51 per hour (*see* ECF No. 40 at 16-17; ECF No. 41-2), as explained earlier, the Court cannot consider such evidence extrinsic to Rathod's complaint or resolve the factual disputes that such evidence raises. The Court therefore grants Rathod leave to file a second amended complaint solely to add a minimum wage claim under the FLSA.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART and Plaintiff's request for leave to file a second amended complaint is GRANTED.

Plaintiff Rathod is directed to file a second amended complaint on the docket within seven days of the issuance of this Opinion and Order.

Defendants are further directed to file an answer to the second amended complaint within fourteen days of its being filed on the docket.

The Clerk of Court is directed to terminate the motions at ECF Numbers 31 and 39.

SO ORDERED.

Dated: June 13, 2024
      New York, New York

                                                            J. PAUL OETKEN
                                             United States District Judge